UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **TARGETED JUSTICE INC.,** § | | |
| § | | |
| *Plaintiff* § | | |
| § | | |
| v. § | | Civil Action No. **6:24-cv-00017** |
| § | | |
| **OFFICE OF THE INSPECTOR** § | | |
| **GENERAL,** § | | |
| **UNITED STATES DEPARTMENT** § | | |
| **OF JUSTICE** § | | |
| § | | |
| *Defendant.* § | | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant the Department of Justice ("DOJ"), along with its component co-Defendant Office of the Inspector General ("OIG") (collectively, "Defendant") respectfully moves for summary judgment.

Respectfully submitted,

NICHOLAS GANJEI
UNITED STATES ATTORNEY

By: /s/ *Lander B. Baiamonte*
   LANDER B. BAIAMONTE
   Assistant United States Attorney
   Southern District of Texas No.: 3312493
   Texas State Bar No.: 24103831

800 N. Shoreline Blvd., Suite 500  
Corpus Christi, TX 78401  
Telephone No.: (361) 888.3111  
Facsimile No.: (361) 888.3200  
E-Mail: lander.baiamonte@usdoj.gov  

**ATTORNEY FOR DEFENDANT**

## TABLE OF CONTENTS

PAGE

I. NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 4

II. STANDARD OF REVIEW .............................................................................................. 4

III. FACTUAL BACKGROUND ........................................................................................... 5

IV. ARGUMENT .................................................................................................................... 7

    1. Background Law on the FOIA ................................................................................. 7

    2. The OIG performed an adequate search that was reasonably calculated to yield responsive documents. .............................................................................................. 8

    3. The referral of 726 pages of records to the FBI for processing was appropriate. ........ 11

    4. OIG properly withheld information under exemptions 6 and 7(c) to protect personal privacy interests. ...................................................................................................... 11

        a) Exemption 7(C) Was Properly Asserted to Protect Personal Information in Law Enforcement Records. ........................................................................................ 12

        b) Exemption 6 Was Properly Asserted to Protect Personal Information. ................ 13

V. CONCLUSION ................................................................................................................ 15

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed this case on May 30, 2024 (ECF No. 1), alleging claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Defendant answered Plaintiff's Complaint on July 3, 2024 (ECF No. 8). Plaintiff served discovery requests on Defendant on July 29, 2024, which it subsequently withdrew following Defendant filing a motion for protective order at the initial pretrial scheduling conference on August 19, 2024. On August 14, 2024, Defendant provided a partial response to Plaintiff's FOIA request. On September 11, 2024, Defendant completed its search and propounded the results to Plaintiff. The Court held a status conference on October 2, 2024, during which Defendant informed the Court it had completed its search in response to Plaintiff's FOIA request and, in a subsequent Minute Order on the same day, the Court instructed Defendant to file status reports with the court every sixty days. On October 22, 2024, Plaintiff served Defendant with written discovery. On November 20, 2024, Defendant filed a motion for protective order against Plaintiff's discovery requests (ECF No. 11). On February 10, 2025, the Court granted the protective order, staying discovery until after the filing of a motion for summary judgment (ECF No. 20). Defendant now moves for summary judgment.

## II.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure mandates that summary judgment be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved. *Wickwire Gavin, P.C. v. U.S.*

4

*Postal Service*, 356 F.3d 588, 591 (4th Cir. 2004) (citing *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993)) ("FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified."); *accord Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002) ("Summary judgment resolves most FOIA cases"). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001; *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

### III.   FACTUAL BACKGROUND

On February 5, 2024, Plaintiff submitted a FOIA request via OIG's online FOIA request portal seeking documents related to the "Terrorist Screening Center." In this FOIA request, Plaintiff sought four categories of documents: (a) all OIG audit reports of the Terrorist Screening Center from the year 2007 to the present; (b) Federal Bureau of Investigation (FBI) and Terrorist Screening Center emails, letters, replies, objections other document filed or sent in reaction to the OIG's audit reports since 2007; (c) documents regarding administrative or judicial enforcement action to bring agency into compliance with regulations, the constitution and the law; and (d) complaints made to the OIG since 2007 regarding the Terrorist Screening Center Operations. Plaintiff also sought expedited processing of the request.

On February 20, 2024, Defendant assigned FOIA request number 24-OIG-154 to Plaintiff's FOIA request. Defendant also denied Plaintiff's request for expedited processing.

On May 30, 2024, Plaintiff filed the Complaint in the instant action (ECF No. 1). On August 14, 2024, Defendant provided Plaintiff with an initial, partial response. In it, regarding Plaintiff's request for "all OIG audit reports of the Terrorist Screening Center from the year 2007 to the present," Defendant provided Plaintiff with a link to the only OIG audit report that was responsive to Plaintiff's request. Regarding Plaintiff's request for "documents regarding administrative or judicial enforcement action to bring agency into compliance with regulations, the constitution, and the law," the Defendant informed Plaintiff that no responsive documents were located within the OIG. Finally, regarding Plaintiff's request for "complaints made to the OIG since 2007 regarding the Terrorist Screening Center Operations," Defendant located three pages of responsive records. Defendant withheld certain information contained on those three pages pursuant to FOIA exemptions (b)(6) and (b)(7)(C), which protect the privacy interests of individuals.

On September 10, 2024, Defendant issued its final response to Plaintiff's FOIA request. In the response, Defendant informed Plaintiff that regarding the portion of the request seeking "Federal Bureau of Investigation and Terrorist Screening Center emails, letters, replies, objections other document filed or sent in reaction to the Office of the Inspector General's audit reports since 2007," Defendant located 726 pages of records that originated with the Federal Bureau of Investigation ("FBI"). These records were referred to the FBI for processing and the FBI's direct response to Plaintiff in accordance with 28 C.F.R. § 16.4(d)(2). Defendant further informed Plaintiff it had completed its search and that no other responsive documents had been located.

## IV.    ARGUMENT

**1. Background Law on the FOIA**

FOIA cases "appropriately are decided on motions for summary judgment." *Transparency Project v. United States Dep't of Just.*, No. 420CV00467SDJCAN, 2022 WL 18776191, at *2 (E.D. Tex. Sept. 9, 2022) (citing *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). To prevail at summary judgment, the agency must demonstrate that "its search for the requested material was adequate and that any withheld material is exempt from disclosure." *Calle v. F.B.I.*, No. 3:10-CV-2362-M, 2011 WL 3820577, at *4 (N.D. Tex. Aug. 5, 2011) report and recommendation adopted, No. 3:10-CV-2362-M, 2011 WL 3837031 (N.D. Tex. Aug. 26, 2011) (citing, e.g., *Cooper Cameron Corp. v. U.S. Dep't of Lab., Occupational Safety & Health Admin.*, 280 F.3d 539, 543 (5th Cir. 2002)).

Further, FOIA "does not require an agency to show that it has identified every document that is responsive to a request, but only that 'it performed a search reasonably calculated to yield responsive documents.'" *Negley v. F.B.I.*, 589 F. App'x 726, 729 (5th Cir. 2014) (citations omitted). An agency's adequate search can be established by showing that the agency used "methods which can be reasonably expected to produce the information requested." *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) (citations omitted). To meet this burden, the agency can use affidavits or declarations which are entitled to a "presumption of legitimacy . . . unless there is evidence of bad faith in handling the FOIA request." *Calle*, 2011 WL 3820577, at *4 (citing *Batton* 598 F.3d at 176)

"Once the agency has shown that its search was reasonable, the burden shifts to the plaintiff to present evidence creating a genuine issue of material fact 'as to the adequacy of the

7

search.'" *Brewer v. United States Dep't of Just.*, No. 3:18-CV-1018-B-BH, 2019 WL 3948351, at *4 (N.D. Tex. July 30, 2019, report and recommendation adopted, No. 3:18-CV-1018-B, 2019 WL 3947132 (N.D. Tex. Aug. 21, 2019) (citing *Negley*, 589 F. App'x at 730). A plaintiff cannot defeat a summary judgment motion with "[m]ere speculation that as yet uncovered documents may exist." *Negley*, 589 F. App'x at 730. "As a matter of law, a requester's demand that certain records systems be searched does not obligate the agency to search those systems." *Morgan v. Fed. Bureau of Investigation*, No. A-15-CA-1255-SS, 2016 WL 7443397, at *3 (W.D. Tex. May 24, 2016) (citation omitted).

### 2. The OIG performed an adequate search that was reasonably calculated to yield responsive documents.

Courts have affirmed the adequacy of the agency's search in FOIA cases based on declarations like the one provided here by Defendant. For example, in *Rutila v. United States Dep't of Transportation*, the Court granted summary judgment in favor of the agency based on declarations attesting that "no other organization within the agency would be likely to maintain the records [the plaintiff] requested." No. 3:16-CV-2911-B, 2022 WL 2359640, at *7 (N.D. Tex. June 30, 2022), aff'd, 72 F.4th 692 (5th Cir. 2023). Because the agency "requested any records from all the agencies that might prove responsive to [the] request . . . [T]he search 'was reasonably calculated to discover the requested documents.'" *Id.*

Similarly, in *Morgan v. Fed. Bureau of Investigation*, Section Chief Hardy explained in a declaration that "any and all responsive records would reasonably be expected to be located on the FBI's Central Records System (CRS), the principal records system used to locate information responsive to FOIA requests." No. A-15-CA-1255-SS, 2016 WL 7443397, at *2 (W.D. Tex. May 24, 2016). The court concluded that "[b]ased on Hardy's affidavit, and

8

considering the lack of any contradictory evidence or evidence of bad faith . . . these search methods could be 'reasonably expected to produce the information requested' and were therefore adequate." *Id.* The court specifically rejected the unsupported claim that the FBI should have searched other systems, since the declaration specifically stated that "[a]t this point, the FBI has no factual basis to conclude records exist anywhere else; therefore additional searches are not warranted." *Id.* at *3.

Here, Mr. Butler's declaration (Ex. 1, Sworn Declaration of Darice Butler, or "Butler Decl.") provides similar information establishing the adequacy of the OIG's search regarding each of the four categories Plaintiff requested. He attested that in an effort to locate documents responsive to Plaintiff's requests in (a)[1] and (b)[2] regarding audit reports, "the OIG Audit Division conduct[ed] a search for records in the Audit database system for all of the OIG's audit reports of the Terrorist Screening Center from January 1, 2007, to February 5, 2024, and for Federal Bureau of Investigation and Terrorist Screening Center emails, letters, replies, objections and other documents filed or sent in reaction to the OIG's audit reports since 2007." Ex. 1, Butler Decl., ¶ 5. This search produced one audit report responsive to Plaintiff's request—audit no. 07-41—and 726 pages of records that originated with the FBI.

In the search for documents responsive to category (d)[3] regarding complaints made to OIG about the Terrorist Screening Center Operations, Mr. Butler attested that OIG's Investigations Division (the division responsible for receiving and processing complaints

---

[1] "All OIG audit reports of the Terrorist Screening Center from the year 2007 to the present."
[2] "Federal Bureau of Investigation (FBI) and Terrorist Screening Center emails, letters, replies, objections other document filed or sent in reaction to the OIG's audit reports since 2007."
[3] "Complaints made to the OIG since 2007 regarding the Terrorist Screening Center Operations."

related to fraud, waste, abuse, and misconduct of DOJ employees, contractors, grantees, and other outside parties) "conducted a search in the OIG Investigative Data Management System investigative records database for complaints made to the OIG from January 1, 2007, through February 5, 2024, regarding the Terrorist Screening Center Operations." *Id.* at ¶ 6. OIG further expanded its search by conducting two additional FOIA searches using the search terms "Terrorist Screening Center" and "Screening Center." *Id.* As a result of these various searches, OIG produced three responsive documents to Plaintiff.

Finally, regarding part (c)[4] of Plaintiff's FOIA request, Mr. Butler explained that "OIG's authority does not extend to bringing administrative actions or enforcement actions against a component for the purpose of compelling compliance with OIG recommendations connected to its reporting. As such, no OIG records regarding administrative or judicial actions taken by OIG to bring an agency into compliance can exist." *Id.* at ¶ 7. Nonetheless, OIG took the additional step of requesting the "Audit Division conduct a search for any records in its possession reflecting any other entity bringing an administrative or enforcement action for compliance by the Federal Bureau of Investigation." *Id.* Yet, even with this extra step, no responsive documents were located.

Mr. Butler's detailed explanation of how the search for each category of documents was conducted in his affidavit, including what databases were searched and additional good faith measures were taken, establish that OIG conducted a search reasonably calculated to uncover all relevant responsive documents. *See Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010)

---

[4] "Documents regarding administrative or judicial enforcement action to bring agency into compliance with regulations, the constitution and the law."

(finding declaration listing particular databases searched and why demonstrated agency's search reasonably calculated to yield responsive documents).

### 3. The referral of 726 pages of records to the FBI for processing was appropriate.

In its search for records responsive to Plaintiff's request for documents relating to "Federal Bureau of Investigation (FBI) and Terrorist Screening Center emails, letters, replies, objections other document filed or sent in reaction to the OIG's audit reports since 2007", OIG located 726 pages of documents originating with the FBI. When a component or agency processing a FOIA request believes that "a different component, agency, or other Federal Government office is best able to determine whether to disclose the record, the component typically should refer the responsibility for responding to the request regarding that record, as long as the referral is to a component or agency that is subject to the FOIA. Ordinarily, the component or agency that originated the record will be presumed to be best able to make the disclosure determination." 28 C.F.R. § 16.4(d)(2). Here, because the FBI originated the records, OIG presumed the FBI was better equipped to make a disclosure determination and referred the 726 documents accordingly.

### 4. OIG is properly withholding information under exemptions 6 and 7(c) to protect personal privacy interests.

OIG produced three documents in response to Plaintiff's request for "[c]omplaints made to the OIG since 2007 regarding the Terrorist Screening Center Operations." Pursuant to 7(C) and 6, OIG partially redacted those documents to protect portions of records the disclosure of which might be an unwarranted invasion of personal privacy. 5 U.S.C. §§ 552(b)(6), (b)(7). Exemption 7(C) requires the records at issue to be complied for a law

11

enforcement purpose. 5 U.S.C. § 552(b)(7). Exemption 6, on the other hand, must be information that is contained in a personnel, medical or "similar file." 5 U.S.C. § 552(b)(6). Both exemptions require the agency to perform a balancing test that weighs the public interest in disclosure against the interest in privacy. *Dep't of Defense v. Fed. Labor Rel. Auth.*, 510 U.S. 487, 497 (1994). Unlike the balancing test in exemption 6, however, the balance more easily tips toward the privacy interest at issue in exemption 7(C). *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004 (noting differences in statutory protection of privacy interests between exemption (b)(6) and exemption (b)(7)(C)).

> a) *Exemption 7(C) Was Properly Asserted to Protect Personal Information in Law Enforcement Records.*

Exemption 7(C) exempts from disclosure law enforcement information whose disclosure might be an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). OIG must meet two criteria to supports assertion of exemption 7(C). First, the information must have been compiled for law enforcement purposes. *SafeCard Servs. v. S.E.C.*, 926 F.2d 1197, 1205 (D.C. Cir. 1991). Second the privacy interest must be weighed against the interest in disclosure. *Id.* At the first step, "[e]xemption 7C covers investigatory files related to enforcement of all kinds of laws, including those involving adjudicative proceedings." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 178 (D.C. Cir. 2002); *see also Kay v. F.C.C.*, 867 F. Supp. 11, 17–18 (D.D.C. 1994) (explaining that FCC investigation into broadcaster's alleged violations of law was law enforcement purpose, where broadcaster's licenses could be revoked, pending license applications could be denied, and fines could have been imposed). Complaints to the OIG are compiled for "'law enforcement purposes' under exemption (b)(7)(c) because the

12

OIG is vested with authority to investigate allegations of criminal and administrative misconduct by Department employees 28 C.F.R. § 0.29a(b)(2)." (Ex. 1, Butler Decl., ¶ 12).

At the second step of the analysis, the public interest in disclosure must be weighed against the interest in privacy. "[T]he only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Nat. Desert Ass'n,* 519 U.S. 355, 355-56 (1997) (per curium). By contrast, information that "reveals little or nothing about an agency's own conduct" does not further the statutory purpose of the FOIA. *See Dep't of Justice v. Reporters Comm. For Freedom of the Press,* 489 U.S. 749, 773 (1989).

OIG asserts exemption 7(c) to withhold the "names, address, social security numbers, and dates of birth pertaining to the subjects and complainants of the complaints." (Ex. 1, Butler Decl., ¶ 12). Because the personal information that the OIG is withholding under exemption 7(C) reveals little or nothing regarding the operations of the government, the personal privacy interest outweighs the public's interest in disclosure.

    b) *Exemption 6 Was Properly Asserted to Protect Personal Information.*

OIG asserts exemption 6 to withhold, in part, the same information that is protected under exemption 7(C). Agency records are protected from disclosure under exemption 6 if they pass a two-part balancing test: (1) whether the information at issue is contained in a personnel, medical, or "similar" file covered by exemption 6; and (2) if so, whether disclosure "would constitute a clearly unwarranted invasion of personal privacy" by balancing the privacy interest that would be compromised by disclosure against any public interest in the requested

13

information. *See Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). In balancing these interests, the only public interest that weighs in favor of disclosure is the public's interest in learning about the operations of government. *Id.*

The information at issue here is not in a personnel or medical file, but it is in a "similar file" as courts have defined that term. The Supreme Court held that Congress intended the term "similar files" to be interpreted broadly because an individual's privacy "surely was not intended to turn upon the label of the file which contains damaging information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601 (1982). For this exemption, the information need not be a physical file at all; it may merely be "bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'" *Judicial Watch, Inc. v. F.D.A.*, 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir.1987)). "Where there is no countervailing public interest, however, courts regularly allow the identifying information of individuals to be withheld under FOIA exemption." *Highland Cap. Mgmt., LP v. Internal Revenue Serv.,* 408 F. Supp. 3d 789, 816–17 (N.D. Tex. 2019) *See e.g., United States Department of State v. Ray,* 502 U.S. 164, 179 (1991) (disclosing the names of immigrants who returned to their home country would be a clearly unwarranted invasion of privacy because the proposed public benefit was hypothetical).

In this case, OIG is withholding the names and personally identifiable information of third parties and "lower-level OIG employees who handled the intake process of the complaints." (Ex. 1, Butler Decl. ¶ 12.) Such "bits of personal information" contained in the complaints would create a palpable threat to privacy that the FOIA intended to protect.

The only cognizable public interest under the FOIA is to shed light on the performance

14

of an agency's statutory obligations or to shine light on what the government is up to. Like exemption 7(C), OIG properly withheld records under FOIA exemption 6 because the personal information withheld reveals little or nothing regarding the operations of the government and, therefore, the personal privacy interest outweighs the public's interest in disclosure.

## V.    CONCLUSION

For the foregoing reasons, Defendant Office of the Inspector General, Department of Justice respectfully requests that the Court enter summary judgment in its favor.

## **CERTIFICATE OF SERVICE**

I certify that on March 10, 2025, the foregoing was filed and served on counsel for Plaintiff via the Court's CM/ECF service.

/s/ *Lander B. Baiamonte*
Lander B. Baiamonte
Assistant United States Attorney